IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TINA MARIE MATULA,
    Plaintiff,

                                    6:16-cv-01762-PK
                                      OPINION AND ORDER

v.


NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

    Plaintiff Tina Marie Matula filed this action on September 3, 2016, seeking judicial review of the Commissioner of Social Security's final decision denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). ECF No. 1. This court has jurisdiction over Matula's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to a Magistrate Judge in accordance with Fed. R. Civ.

P. 73 and 28 U.S.C. § 636(c). I have considered all of the parties' briefing and the relevant evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, an administrative law judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation proceeds to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140–41; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482

U.S. at 141; *see also* 20 C.F.R. §416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153–54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, *available at* 1985 WL 56856).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, Subpt. P, App. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations

imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, *available at* 1996 WL 374184.

At the fourth step, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet his burden at the fifth step. *See id.*; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. §

405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See id.* (citing *Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 1989) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

## SUMMARY OF ADMINISTRATIVE RECORD

Born in September 1980, Matula was 30 years old on her alleged onset date of April 26, 2011. Tr. 91, 99–100, 112. Matula completed a GED program in 2010 and has no past relevant work experience. Tr. 88, 258, 736. On April 29, 2011, Matula filed a Title XVI application for supplemental security income. Tr. 216–26. She alleged disability in her initial application due to: bipolar disorder, personality disorder, post-traumatic stress disorder ("PTSD"), and a learning disability. Tr. 91, 99. After her application was denied initially and upon reconsideration,

Matula requested a hearing before an ALJ. Tr. 30, 91, 100. [1]

## I. The Medical Record

Neither party supplied a summary of the medical record in this case. Other than generally asserting the post-hearing evidence she supplied undermines the ALJ's decision, Matula does not specifically challenge the ALJ's weighing of the medical evidence of record. Accordingly, after a careful review of the record and the ALJ's decision, the Court adopts the ALJ's summary of the medical evidence as supplemented by the Court's description of the post-hearing evidence submitted by Matula. *See* Tr. 36–43; *see also infra* at 8–14.

## II. The Administrative Hearing

On April 16, 2014, the ALJ held a hearing, at which Matula testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 61–90.[2] The ALJ found that Matula did "not possess past relevant work experience" and asked the VE to:

> assume an individual with the same age, education and work experience as [Matula] who is further limited to no more than frequent stooping, kneeling, crouching, crawling or climbing. Please assume this individual would also be limited to no more than occasional contact with the general public. Would such an individual be capable of . . . performing any other jobs that exist in significant numbers in the national or regional economy?

---

[1] This recitation constitutes a summary of the pertinent evidence within the Administrative Record, and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as ECF No. 9. The record before the Court constitutes more than 800 pages, with some duplicative documents. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

[2] The ALJ held a previous administrative hearing on December 13, 2013. *See* Tr. 52–60. However, Matula appeared at that hearing unrepresented by counsel and was granted a continuance to obtain a representative. Tr. 56, 190.

Tr. 87–88. The VE answered in the affirmative and that such an individual would be able to perform the jobs of: sweeper/cleaner industrial; packager/hand; and office helper. Tr. 88.

On May 15, 2014, the ALJ issued a decision finding Matula not disabled within the meaning of the Act. Tr. 34–45. The decision became the final decision of the Commissioner on July 22, 2016, when the Appeals Council denied Matula's subsequent request for review of the ALJ's decision. Tr. 1–4; *see, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). Matula now appeals to this Court for review of the Commissioner's final decision. ECF No. 1.

## SUMMARY OF ALJ FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found that Matula had not engaged in substantial gainful activity since her April 26, 2011, alleged onset date. Tr. 36.

At step two, the ALJ found that Matula had the following severe impairments: mild lumbar degenerative disc disease, fibromyalgia, bipolar II disorder, PTSD, and borderline personality disorder. *Id.*

At step three, the ALJ found that Matula's impairments, considered either individually or in combination, did not meet or equal the requirements of a listed impairment. Tr. 37; 20 C.F.R. § 404, Subpt P, App. 1.

Because he did not establish disability at step three, the ALJ continued to evaluate how Matula's impairments affected her ability to work. The ALJ resolved that Matula had the RFC to perform medium work with the following limitations:

> [Matula can] perform medium work . . . however she is able to engage in no more than frequent stooping, kneeling, crouching, crawling or climbing and she can tolerate no more than occasional contact with the public.

Tr. 38. At step four, the ALJ found that Matula had no past relevant work. Tr. 44.

At step five, the ALJ found that considering Matula's age, education, work experience, and residual functional capacity a significant number of jobs existed in the national economy such that Matula could sustain employment despite her impairments. Tr. 44.

## ANALYSIS

Matula assigns error to: (1) the ALJ's step three finding that she did not meet a listing; (2) the Appeals Council's determination that post-decision evidence did not provide a basis for overturning the ALJ's decision; (3) the ALJ's credibility determination; and (4) as a result of these alleged errors, the Commissioner failure to meet her burden at step five of the sequential evaluation.

### I. Step Three Finding

Matula's briefing challenges the ALJ's step three finding that she did not meet the criteria of a listing. Pl.'s Br. at 5–6.[3] The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, are "descriptions of various physical and mental illnesses and abnormalities," which are sorted by the body system each affects. *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). A claimant bears the burden of proving the Listing specifications by providing medical evidence establishing all the relevant medical criteria stated in the Listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.

---

[3] In a heading Matula asserts the "Commissioner erred in the assessment of the medical evidence." Pl.'s Br. at 6–10. However, she does not direct the court to the appropriate legal standard for such a challenge, *see, e.g., Garrison v. Colvin*, 759 F.3 995, 1012 (explaining the proper legal standards for a district court's review of an ALJ's evaluation of medical evidence), but argues instead that the ALJ's step three finding is erroneous. As such, the Court declines to address the assertion the ALJ erred in assessing the medical evidence and construes such language as an assignment of error at step three. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (citation omitted) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review."); *see also Shaw v. Astrue*, No. 1:10-cv-02350-JLT, 2013 WL 204742, at *17 (E.D. Cal. Jan. 17, 2013) ("Because Plaintiff failed to identify or discuss any alleged error in the ALJ's reasoning for rejecting portions of the opinions of Drs. Jensen and Harikian, this argument is waived.").

2005). A general assertion of functional problems does not reach the threshold of disability at step three. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). "Listed impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2014) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532(1990)). At the time of the ALJ's decision, listings 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.08 (personality and impulse-control disorders) required that a claimant must have had marked limitations in at least two of the following categories: activities of daily living; social functioning; or concentration, persistence, or pace. 20 C.F.R. Part 404, Subpart P, Appendix 2, 12.00 Mental Disorders C.1–3 (effective date February 26, 2014 through December 8, 2014).

Matula appears to assign error to the ALJ's finding of only mild restrictions in activities of daily living and concentration, persistence, and pace as well as only moderate limitations in social functioning. Pl.'s Br. at 6 (citing Tr. 37–38). Specifically, Matula asserts that the ALJ "minimized the severity of the records that were available to him, overlooked some information, and did not have the opportunity to evaluate the case in light of [medical records submitted to the Appeals Council]." *Id.* Matula's briefing, however, addresses only the ALJ's reasoning regarding her activities of daily living finding. As such, the Court addresses only that argument below. *See Greenwood*, 28 F.3d at 977.

The ALJ did not err in finding Matula had only mild restrictions in activities of daily living. Moreover, this finding remains supported by substantial evidence when viewed in light of the additional evidence submitted to the Appeals Council. The ALJ based his finding of mild restrictions in activities of daily living on the following:

> During the period at issue, she cared for her two children. She cooked and cleaned, sometimes with help from friends. She attended school. She drove. She used a computer frequently. She had hobbies, such as taking pictures and sewing, which she continued to enjoy. Reportedly, she had some difficulty keeping track of her bills.

Tr. 37. Matula offers her own interpretation of this and other evidence. However, "[w]here the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Burch*, 400 F.3d at 679.

Matula also directs the court to a third party function report completed by Manuel Rodriguez, and argues his lay testimony is consistent with her interpretation of the evidence. Pl.'s Br. at 7. Matula did not, however, specifically challenge the ALJ's weighing of the lay testimony. Rather, she once again offers her own interpretation of the evidence. Accordingly, the court declines to address this contention further as the ALJ's interpretation of the evidence was rational and supported by the record. *See Burch*, 400 F.3d 683.

Next, Matula argues that mental health treatment records not available to the ALJ, but added to the administrative record by the Appeals Council, provide a basis for overturning the ALJ's step three determination. However, many of the records to which Matula directs the court to are merely duplicative of reports already in the Administrative Record.[4] *Compare* Tr. 689 (November 2013 treatment note by William Strek, M.D.—which was part of the administrative record available to the ALJ), *with* Tr. 767 (identical text of November 2013 treatment note in a different format—which was added to the administrative record by the Appeals Council). In any event, the evidence added to the record by the Appeals Council fails to establish marked restrictions in activities of daily living; nor does Matula offer "any theory plausible or otherwise"

---

[4] Duplicative medical records are not uncommon in Social Security disability appeals where administrative records regularly exceed a thousand pages.

demonstrating she met a marked limitation in concentration, persistence, and pace or social functioning. *See generally Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding the ALJ did not err where the claimant did not offer any "theory, plausible or otherwise" as to how his impairments combined to equaled a listing).

## II. Post-Decision Evidence Submitted to the Appeals Council

In a similar vein to her step three assignment of error, Matula alleges the Commissioner erred by "ignoring the significance of new material that is from the adjudicative period." Pl.'s Br. at 10–12. The Appeals Council considered post-hearing evidence submitted by Matula's counsel that included treatment records from: (a) Peace Health, spanning October 2013 through May 2014; and (b) Scripps Clinic, spanning August 2012 through February 2013. Tr. 708–38 (exhibit 22F); 739–56 (exhibit 23F); 757–83 (exhibit 24F); 784–838 (exhibit 25F).

The Appeals Council reviewed this submission and found the records "[did] not provide a basis for changing the [ALJ's] decision." Tr. 2. Accordingly, the Appeals Council declined to review the ALJ's decision. Tr. 1. When a claimant "submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159–63 (9th Cir. 2012). The Commissioner agrees that Matula's additional evidence is part of the administrative record; however, she argues that the ALJ's decision remains supported by substantial evidence. *See* Def.'s Br. at 6–7. The question before this Court, therefore, is whether in light of the new evidence the Commissioner's final decision remains supported by substantial evidence.

At the outset, the Court notes the ALJ rendered his decision based on a comprehensive review of a medical record. After review of both the Peace Health and Scripps Clinic records, the Court concludes the Commissioner's decision remains supported by substantial evidence for the reasons that follow.

## A. Peace Health Mental Health Records

As discussed previously, portions of the medical records from Peace Health that Matula argues the ALJ did not have "available to him" are duplicative, and the ALJ did, in fact, have some of those records before him when he issued his decision. However, the ALJ did not have available to him mental health treatment records from Rosemary Rifino, Licensed Clinical Social Worker ("LCSW"). Those records show that Matula met with LCSW Rifino regularly from October 2013 through May 2014. LCSW Rifino consistently diagnosed bipolar and anxiety disorders, as well as PTSD. Tr. 708–38.

Beyond asserting that these records "provide a more complete picture of Ms. Matula's day-to-day life and ability to function in normal life situations within her home," Matula fails to explain how this new evidence contradicts the ALJ's findings; nor does she articulate this claim of error with specificity. "The court need not address issues a plaintiff fails to argue with specificity." *Hassen v. Astrue*, No. 3:08-cv-0742-PK, 2009 WL 9081690, at *7 (D. Or. Dec. 11, 2009) (citing *Carmickle v. Comm'r. of Soc. Sec.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008)). Accordingly, the Court declines to manufacture an argument for her. *Greenwood* 28 F.3d at 977.[5]

---

[5] Even if the Court were to entertain such an argument, it would fail because the ALJ considered evidence of Matula's diagnoses of bipolar and anxiety disorders, as well as PTSD. In fact, the ALJ not only classified those impairments as severe at step two, he also considered their effects throughout his decision. *See, e.g.,* Tr. 36 (finding bipolar II disorder, PTSD, and borderline personality disorder severe); Tr. 40 (discussing Matula's bipolar, major depressive, and personality disorders as well as PTSD). Therefore, despite LCSW Rifino's treatment notes, the ALJ's decision

Page 12 – OPINION AND ORDER

*B. Scripps Clinic Medical Records*

The medical records from Scripps Clinic similarly fail to undermine the ALJ's decision. Those records include x-ray and MRI test results as well as treatment notes from Erika Van Hulzen, physician's assistant ("PA"), and Drs. Adam Burdick and Christopher Uchiyama. In August 2012, PA Van Hulzen noted that an x-ray of Matula's lumbosacral spine revealed normal alignment. Tr. 754. Additionally, she noted that an MRI revealed a "moderate sized broad, subligamentous posterior disc extrusion slightly attenuated to the right side of midline." *Id.* In December 2012, Dr. Burdick offered a second opinion regarding Matula's back pain and noted that the MRI taken in August was "largely unremarkable" and that given her age he was "disinclined to offer surgery." Tr. 744–45. In February 2013, Dr. Uchiyama echoed many of Dr. Burdick's conclusions. Tr. 739–42. He too described the August 2012 MRI as "unremarkable," and similarly declined to recommend surgery. Tr. 741.

This evidence, however, largely mirrored much of the evidence the ALJ directly considered. *Compare* Tr. 40 (ALJ opinion noting both "x-ray and MRI of [Matula's] cervical spine were unremarkable") *with* Tr. 744 (Dr. Burdick noting Matula's MRI results were "largely unremarkable") *and* Tr. 660 ("No significant abnormality is seen in the upper and mid lumbar spine. At L4-L5 there is a mild disc bulge.") *and* Tr. 740 (Dr. Uchiyama noting MRI results were "fairly unremarkable"); *see also* Tr. 444 (noting that MRI results of the cervical spine were unremarkable); Tr. 616 (same). Accordingly, the Court concludes the ALJ's decision remains supported by substantial evidence notwithstanding the submission of new evidence to the Appeals Council. *See Garifalakis v. Berryhill*, No. 3:16-cv-01051-BR, 2017 WL 2608542, at *10–11 (D. Or. June 15, 2017) (finding ALJ's decision remained supported by substantial evidence despite

remains supported by substantial evidence.

post-decision submission and holding the "Commissioner did not err when the Appeals Council determined [the new evidence] did not provide a basis to change the ALJ's decision").[6]

## III. Credibility

Matula next challenges the ALJ's credibility determination. Pl.'s Br. at 12–16. Specifically, Matuala contends that the ALJ failed to provide clear and convincing reasons for rejecting her "subjective complaints and their limiting effects on her life[.]" Pl.'s Br. at 13. Matula asserts that her hearing testimony "was completely consistent with her contemporaneous reports to her medical providers. . . ."[7] Pl.'s Br. at 14. The Commissioner responds that the ALJ permissibly discounted Matula's testimony that "she was unable to leave her house most of the day" because that testimony was inconsistent "both internally and with other information in the case record." Def.'s Br. at 9 (quoting SSR 96-7p, *available at* 1996 WL 374186); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2008).

As a preliminary matter, Matula argues that SSR 16-3p, which superseded SSR 96-7p in March 2016 and eliminated the term "credibility" from symptom testimony evaluation, should provide the "correct standard for evaluating [her] statements" and reviewing the ALJ's decision. Pl.'s Br. at 13–14 (citing SSR 16-3p, *available at* 2017 WL 5180304 and SSR 96-7p, *available at*

---

[6] Matula also submitted school records, which the Appeals Council accepted into the administrative record, and argues the records bolster her claim that her "mental health impairments have roots deep in her past and are very longstanding." Pl.'s Br. at 11 (citing Tr. 360–403). However, the evidence Matula cites predates her 2011 alleged onset date. Indeed, the majority of the evidence she points to occurred more than a decade before her alleged onset date. Moreover, Matula fails to explain how this evidence explains any additional functional limitations not already accounted for in the RFC. As such, this evidence fails to provide a basis for disturbing the Commissioner's decision.

[7] Matula also asserts that her testimony was consistent with the lay witness statement of Manuel Rodriguez; however, as discussed previously, Matula does not specifically challenge the ALJ's weighing of the lay testimony.

1996 WL 374186). SSR 16-3p, however, does not apply to ALJ decisions issued prior to March 28, 2016. SSR 16-3p at *13 n.27 (republishing SSR 16-3p and explaining that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review"); *see also Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 (D. Or. Jan. 27, 2017) (declining to apply 16-3p retroactively); *Bowlin v. Colvin*, No. 6:15-cv-01454-PK, 2016 WL 5339591, at *8 (D. Or. Aug. 18, 2016) (same), report *and recommendation adopted*, No. 6:15-cv-01454-PK, 2016 WL 5339578 (D. Or. Sept. 21, 2016). Here, the ALJ's decision was issued on May 15, 2014. Tr. 45. Consequently, in weighing Matula's credibility the ALJ was permitted to consider "inconsistencies either in [her] testimony or between [her] testimony and [her] conduct . . . ." *Thomas*, 278 F.3d at 958–59 (internal quotation omitted). A court need not uphold all of the ALJ's reasons for discrediting a claimant, so long as substantial evidence supports the ALJ's decision. *Batson*, 359 F.3d at 1197.

The Commissioner argues the ALJ provided several clear and convincing rationales for finding Matula's testimony "not entirely credible." Def.'s Br. at 8 –11. The Commissioner asserts that the ALJ permissibly discounted Matula's testimony based upon her "failure to seek treatment," citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, beyond generally asserting that Matula "was not compliant with treatment at times" the ALJ failed to state specifically what testimony was not credible and why. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a general finding . . . and comb the administrative record to find specific conflicts."). As such, this was not a clear and convincing rationale to discount Matula's testimony. The Commissioner also asserts that Matula's impairments were "controlled effectively with treatment," and, thus, not disabling. This rationale, however, was not articulated by the ALJ

in his decision. Therefore, this Court cannot affirm based upon reasoning not articulated by the ALJ. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

The ALJ, however, did articulate at least one clear and convincing rationale for concluding Matula was "not entirely credible." Tr. 42. The ALJ concluded that Matula's daily activities were not consistent with the type and degree of limitations she alleged. *Id.* In support of this finding, the ALJ noted that although Matula testified she spent approximately 70% of the her time in bed (Tr. 70) that assertion conflicted with her ability to perform the following activities: (1) serving as the sole care provider for her two children; (2) assisting her children with homework and attending parent-teacher conferences; (3) washing clothes; (4) driving; (5) shopping; and (6) interacting regularly with friends. Def.'s Br. at 9; *see also* Tr. 42, 70–74, 289–92. Moreover, the ALJ additionally noted that the "minimal objective findings to support the existences of [Matula's] alleged" symptoms and "minimal ties to the workforce" further detracted from her credibility. *See Thomas*, 278 F.3d at 958–59.[8]

In sum, because the ALJ provided clear and convincing reasons to discount Matula's

---

[8] Matula's assertion that the ALJ "could not discredit [her] testimony as to the severity of her symptoms merely because they were unsupported by objective medical evidence" is misplaced. Pl.'s Br. at 13. Although an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence," *Bunnel v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc), a lack of objective medical evidence may detract from a claimant's credibility when coupled, as here, with other permissible rationales for discounting a claimant's credibility, *see Thomas*, 278 F.3d at 958–59 (upholding ALJ credibility determination based on lack of "objective medical evidence," the claimant's "poor work history," and the claimant's ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping"). The remainder of Matula's credibility arguments fail because they consist primarily of her own interpretation of her subjective symptom testimony and the medical evidence. Here, the ALJ provided a permissible rationale for discounting her credibility, and his conclusions were rational. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1009 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Burch*, 400 F.3d at 679.

Page 16 – OPINION AND ORDER

symptom testimony, the overall credibility decision is supported by substantial evidence and is upheld. *See Batson*, 359 F.3d at 1197; *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in one reason for discounting credibility is harmless where an ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record").

## IV. RFC

Matula contends that—due to the error she alleges at step three, the Appeals Council's determination that her post-decision evidence did not provide a basis for overturning the ALJ's decision, and the ALJ's allegedly erroneous discounting of her subjective symptom testimony— the Commissioner failed to meet her step five burden because the RFC did not include all of her limitations. Pl.'s Br. at 16–20. The ALJ has the responsibility of determining the claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is the "most [a claimant] can still do despite [the claimant's] limitations," and is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). The RFC is used at step four of the sequential analysis to determine if the claimant is able to perform past relevant work, and at step five to determine if the claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). The Court must uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss*, 427 F.3d at 1217.

Matula, however, essentially restates arguments she has already made. For example, she argues the ALJ discounted Matula's mental health impairments and "did not have the benefit of the

insight afforded by [LCSW] Rifino's counseling records"; however, as discussed *supra* at 12, Matula fails to articulate how those records depict impairments greater than the ALJ considered. Indeed, the ALJ discussed at length Matula's mental health impairments. *See* Tr. 41–42.

Matula contends the ALJ should have included in the RFC and hypothetical question to the VE a limitation regarding her "ability to tolerate interactions with coworkers," but Matula fails to provide a specific citation to the record to support such an assertion. Pl.'s Br. at 18. Although an independent review of LCSW Rifino's records reveals a single instance where Matula self-reported that she was "fired from many jobs or quit because of difficulty with co-workers," the Court declines to manufacture an argument for Matula, which would require imputing Matula's statement as LCSW Rifino's opinion. Tr. 735; *see Greenwood*, 28 F.3d at 977 ("a bare assertion does not preserve a claim"). The same goes for Matula's bare assertion that the "ALJ erroneously omitted chronic pain as a severe impairment." Pl.'s Br. at 19; *see Greenwood*, 28 F.3d at 977.[9]

Matula also asserts that the ALJ "mischaracterized her various life activities . . . as evidence that [she] would be able to work." Pl.'s Br. at 19. It is unclear to the Court the specific error Matula alleges here. The ALJ discussed Matula's activities of daily living in two sections of his decision. First, the ALJ discussed Matula's daily activities in finding her impairments did not meet a listing. Tr. 37–38. For the reasons discussed *supra* at 8–11, this was proper. Second, the

---

[9] Even assuming *arguendo* that the ALJ erred, because the ALJ's sequential evaluation properly considered the effects of chronic pain any purported error at step two was harmless. In his decision, the ALJ noted "that the treatment records received at the hearing level supported that [Matula] continued to seek medical care for chronic pain". Tr. 43; *see Burch*, 400 F.3d at 682–83 (explaining that any error in omitting an impairment from the severe impairments at step two is harmless where step two is resolved in claimant's favor). For this reason too, Matula's contention that the ALJ "underrated the impact of Ms. Matula's chronic pain" fails because the ALJ expressly considered Matula's pain symptoms. Pl.'s Br. at 17.

ALJ discussed Matula's daily activities as part of his credibility analysis. Tr. 42–43. As discussed *supra* at 14–17, the ALJ provided a clear and convincing rationale for not fully crediting Matula's subjective symptom testimony. Moreover, the ALJ did not characterize her daily activities as evidence Matula could work; rather, the ALJ explained that Matula's "activities are inconsistent with the type and degree of limitation she alleged," which was permissible. Tr. 42; *see generally Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (explaining the activities of daily living may be used: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; *or (2) to "contradict [a claimant's] testimony"*) (emphasis added).

Matula next argues the "ALJ/Commissioner made several errors at Step Five of the sequential analysis, which resulted in an incorrect conclusion that Ms. Matula has the RFC for sustained SGA work anything up to the medium exertional capacity." Pl.'s Br. at 17–18. She then offers her own conclusions as to her inability to sustain work competitively. However, "[w]here the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Burch*, 400 F.3d at 679.

Finally, Matula's contention that in formulating the RFC, the ALJ ignored the lay witness testimony of Mr. Rodriguez fails for at least three reasons. Pl.'s Br. at 19. First, as discussed *supra* at 10 and 14 n.6, Matula does not specifically challenge this finding with argument beyond a general assertion in her step five challenge; nor does she direct the Court to the appropriate legal standard. *See generally Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (explaining that to reject lay testimony an ALJ "must provide reasons that are germane to each witness . . . and the reasons germane to each witness must be specific") (internal quotation omitted). Second, Matula's assertion that the ALJ wholly ignored Mr. Rodriguez's testimony belies the record. Indeed, the ALJ devoted a full paragraph to the lay witness testimony offered by Matula, and, in fact, gave

"some weight" to Mr. Rodriguez's report. *See* Tr. 43. Third, even if the ALJ had ignored Mr. Rodriguez's testimony or provided a non-specific non-germane reason for discounting the testimony, any error would have been harmless because where—as here—the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony is harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (citations omitted).[10]

In sum, in crafting Matula's RFC, the ALJ included all of the limitations supported by substantial evidence in the record, and by extension the dispositive hypothetical to the VE. *Osenbrock*, 240 F.3d at 1163–65. Based on the testimony of the VE, that jobs existed in significant numbers in the national and regional economy that Matula could perform, the ALJ reasonably concluded Matula was not disabled within the meaning of the Act. Tr. 45, 87–88. Accordingly, the ALJ's step five finding is affirmed.[11]

///

///

///

///

---

[10] Matula also asserts that the ALJ "did not know her spinal condition had worsened to the point doctors in 2013 proposed to perform a surgery that never happened." However, the ALJ discussed in multiple parts of his decision her reports of back pain, *see, e.g.*, Tr. 40–43, and any error this may have created was harmless because, as discussed *supra* at 13, Drs. Burdick and Uchiyama both ultimately recommended against surgery. Tr. 741, 744–45.

[11] Because I conclude for the reasons contained herein that the ALJ's decision applied the proper legal standards and his findings are supported by substantial evidence in the record, I decline to address Matula's argument regarding remand. *See* 42 U.S.C. § 405(g); *see also Batson*, 359 F.3d at 1193.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision denying Matula's application for supplemental security income under Title XVI is AFFIRMED and this case is DISMISSED. IT IS SO ORDERED.

**IT IS SO ORDERED.**

DATED this 15th day of December, 2017.

Honorable Paul Papak
United States Magistrate Judge